# 24-1672-CV

## United States Court of Appeals

*for the*

## Second Circuit

---

IN RE: AAM HOLDING CORP.

---

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, (EEOC),

*Applicant-Appellee,*

— v. —

AAM HOLDING CORP., agent of Flashdancers Gentlemen's Club,
59 MURRAY STREET ENTERPRISES, INC.,
agent of Flashdancers Gentlemen's Club,

*Respondents-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (NEW YORK CITY)

## BRIEF FOR RESPONDENTS-APPELLANTS

JEFFREY A. KIMMEL
AKERMAN LLP
*Attorneys for Respondents-Appellants*
1251 Avenue of the Americas,
37th Floor
New York, New York 10020
(212) 880-3800
jeffrey.kimmel@akerman.com

---

COUNSEL PRESS    (800) 4-APPEAL • (333334)

## **RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Appellants-Respondents certifies the following— AAM Holding Corp. ("AAM") and 59 Murray Street Enterprises Inc. ("59 Murray") (59 Murray and AAM collectively known hereinafter as the "Respondents") have no parent corporation or publicly held corporation that owns 10% or more of its stock.

AKERMAN LLP

By: */s/  Jeffrey A. Kimmel*
    Jeffrey A. Kimmel Esq.
    1251 Avenue of the Americas, 37th Floor
    New York, New York 10020
    jeffrey.kimmel@akerman.com
    Attorney for Respondents

# TABLE OF CONTENTS

**Page**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT......................................i

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ........................................................1

    I.    Subject Matter Jurisdiction.................................................1

    II.   Appellate Jurisdiction.......................................................1

    III.  Timeliness of Appeal........................................................1

    IV.  Appeal from Judgment and Standard of Review ...................1

STATEMENT OF THE ISSUES PRESENTED................................2

STATEMENT OF THE CASE................................................................3

    I.    Nature of the Case .............................................................3

    II.   Relevant Factual and Procedural Background ....................3

SUMMARY OF THE ARGUMENT ....................................................8

ARGUMENT .........................................................................................9

    I.    Standard of Law ................................................................9

    II.   The District Court Erred in Finding that the EEOC's Subpoenas Are Not Overly Broad........................................11

    III.  The District Court Erred in Not Finding that the Subpoenas Are Overly Burdensome........................................16

    IV.  The District Court Erred in Finding that Producing the Information Requested by the Subpoenas Would Not Invade the Privacy of Respondents' Employees............................20

    V.   The EEOC Does Not Have the Authority to Continue Its Investigation After Ms. Flores-Thomas Filed Her Lawsuit...............21

CONCLUSION......................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*E.E.O.C. v. Fed. Home Loan Mortg. Corp.*,
   37 F. Supp. 2d 769 (E.D. Va. 1999) ...................................................22

*E.E.O.C. v. Hearst Corp.*,
   103 F.3d 462 (5th Cir. 1997) .............................................................22

*E.E.O.C. v. McCormick & Schmick's*,
   No. C07-80065 WHA, 2007 WL 1430004 (N.D. Cal. May 15, 2007)...............17

*E.E.O.C. v. Nestle Prepared Foods*,
   2012 WL 1888130 (E.D. Ky. 2012) ...................................................12

*E.E.O.C. v. Royal Caribbean Cruises*,
   771 F.3d 757 (11th Cir. 2014) .................................................. 13, 14

*EEOC v. ABM Janitorial-Midwest, Inc.*,
   671 F. Supp. 2d 999 (N.D. Ill. 2009) ...............................................16

*EEOC v. Burlington N. Santa Fe R.R.*,
   669 F.3d 1154 (10th Cir. 2012) .......................................................10

*EEOC v. Ford Motor Credit Co.*,
   26 F.3d 44 (6th Cir. 1994) ..............................................................16

*EEOC v. Forge Indus. Staffing, Inc.*,
   No. 1:14-MC-00090-SEB, 2014 WL 6673574
   (S.D. Ind. Nov. 24, 2014) ........................................................ 10, 15

*EEOC v. Loyola Univ. Med. Ctr.*,
   823 F. Supp. 2d 835 (N.D. Ill. 2011) ...............................................10

*EEOC v. McLane Company, Inc.*,
   No. CV-12-615-PHX-GMS, 2012 WL 1132758
   (D. Ariz. April 4, 2012) .................................................................17

*EEOC v. Shell Oil Co.*,
   466 U.S. 54 (1984) ........................................................................10

*EEOC v. United Air Lines, Inc.*,
   287 F.3d 643 (7th Cir. 2002) .............................................. 10, 15, 16

*Equal Emp't Opportunity Comm'n v. Eberspaecher N. Am. Inc*.,
  67 F.4th 1124 (11th Cir. 2023)................................................................13

*Equal Emp't Opportunity Comm'n v. Se. Food Servs. Co., LLC*,
  No. 3:16-MC-46-TAV-HBG, 2017 WL 1155040
  (E.D. Tenn. Mar. 27, 2017) ....................................................................15

*Equal Emp't Opportunity Comm'n v. TriCore Reference Labs*.,
  849 F.3d 929 (10th Cir. 2017)................................................................12

*NLRB v. Am. Med. Response, Inc*.,
  438 F.3d 188 (2d Cir. 2006) ...................................................................17

*United States Sec. & Exch. Comm'n v. O'Brien*,
  842 F. App'x 652 (2d Cir. 2021).......................................................... 1-2

*United States v. Stillwell*,
  986 F.3d 196 (2d Cir. 2021)....................................................................22

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ...........................................................................................1

29 U.S.C. § 161 .............................................................................................1

42 U.S.C. § 2000e-5(f)(3) .............................................................................1

42 U.S.C. § 2000e-9 ......................................................................................1

42 U.S.C. §2000e-8(a) .................................................................................10

## JURISDICTIONAL STATEMENT

### I.   Subject Matter Jurisdiction

Appellees, the Equal Employment Opportunity Commission (the "EEOC") commenced by this action in the United States District Court for the Southern District of New York. The District Court had jurisdiction over this case pursuant to 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 2000e-9, and 29 U.S.C. § 161.

### II.   Appellate Jurisdiction

This Court has appellate jurisdiction because this is an appeal from a final decision appealable as of right under 28 U.S.C. § 1291.

### III.   Timeliness of Appeal

Respondents filed the Notice of Appeal on June 20, 2024, within thirty days of the District Court's entry of the order granting enforcement of the EEOC's subpoenas (the "Subpoena Order") on June 6, 2024.

### IV.   Appeal from Judgment and Standard of Review

This is an appeal from the District Court's Subpoena Order, granting the EEOC's petition to enforce certain subpoenas issued to Respondents.

The standard of review for each issue proposed to be raised on appeal, except for the fourth issue noted below, is abuse of discretion. *United States Sec. & Exch.*

*Comm'n v. O'Brien*, 842 F. App'x 652, 654 (2d Cir. 2021). The standard of review for the fourth issue is *de novo*.[1]

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether the EEOC's Subpoenas which seek sensitive identifying information of all employees of the Respondents' Clubs from January 2019 through November 21, 2023 are overly broad given that the underlying Charge effectively raises only claims of individual sexual harassment.

2.     Whether Respondents submitted sufficient evidence to establish that compiling the voluminous information sought by the Subpoenas would be unduly burdensome to Respondents which are small businesses with limited personnel?

3.     Whether producing the information requested by the EEOC's Subpoenas would invade the privacy of Respondents' employees, most of whom use pseudonyms for anonymity?

4.     Whether the EEOC has the continued authority to investigate the charging party's claims when she was issued a right to sue letter and filed her claims in court on September 25, 2024?

---

[1] As noted below, this issue was not raised before the District Court because the facts underlying the issue were not present when the case was being litigated before the District Court.

## STATEMENT OF THE CASE[2]

### I.    Nature of the Case

This is an appeal in a subpoena enforcement action stemming from the EEOC's demand for information arising out of a charge filed by a person named Eunice Flores-Thomas's ("Ms. Flores-Thomas") who worked as a dancer for Respondents' clubs and claims that she was subject to sexual harassment, which information goes far beyond the claims made by Ms. Flores-Thomas.

### II.   Relevant Factual and Procedural Background

59 Murray is a company that operates an adult entertainment club in Downtown New York City called FlashDancers Downtown. AAM is a company that operates an adult entertainment club in Midtown New York City called FlashDancers Midtown (FlashDancers Downtown and FlashDancers Midtown collectively known hereinafter as the "Clubs"). The Clubs employ adult entertainers ("Entertainers"), to perform at the club.

Ms. Flores-Thomas began working as an Entertainer at FlashDancers Downtown in or around October 2019 and her employment with FlashDancers Downtown ended in or around July 2021. Ms. Flores-Thomas began working as an Entertainer at FlashDancers Midtown in or around October 2019 and her employment with FlashDancers Midtown ended in or around August 2021. Prior to

---

[2] "A- __" refers to the Appellant's Appendix and page number(s).

her employment with each of the Clubs, Ms. Flores-Thomas (like all Entertainers at the Clubs) was apprised of the Clubs' policies against sex and sexual harassment. Importantly, she was told that she should complain to a manager if she was ever subject to sexual harassment or otherwise made to feel uncomfortable while working at the Clubs and that such conduct was not tolerated. A-10, ¶ 8.

At no point during her time at the Clubs did Ms. Flores-Thomas ever claim that she was sexually harassed, or otherwise made to feel uncomfortable. *See* A-12, ¶ 12. In fact, Ms. Flores-Thomas even offered a portion of her earnings to a Floor Manager to help her find clients to entertain (which the Floor Manager declined) in the Clubs" private VIP sections -- contrary to her assertion that she was uncomfortable dancing in the VIP section. *See id*.

Simply put, Ms. Flores-Thomas was never pressured by any employee of the Clubs to do anything she felt uncomfortable doing. Moreover, if Ms. Flores-Thomas had ever felt uncomfortable with a patron for any reason, the Clubs would have taken swift action to remove her from the situation and to escort the patron out of the premises. *See id*. ¶ 11. In fact, prior to Ms. Flores-Thomas's baseless charge of discrimination, the Clubs never had an employee complain that they were somehow pressured to engage with patrons that they were uncomfortable with, despite the Clubs employing thousands of employees over the decades they have been in business.

On or about December 1, 2022, Ms. Flores-Thomas filed a charge of discrimination with the EEOC alleging false, baseless, and unsubstantiated allegations of sex discrimination and sexual harassment. *See* A-5. Namely, in the charge, Ms. Flores-Thomas baselessly and vaguely alleges that she was pressured to engage in sexual conduct with customers of the Clubs. *Id.* In addition to her claims of sexual harassment, Ms. Flores-Thomas, in her Charge makes only two purported "class" claims. In an entirely conclusory manner and without any supporting evidence, she alleged that:

- "at least forty women who were all dancers and who worked for [the Clubs]…all of whom were subjected to a hostile work environment and *quid pro quo* sexual harassment." *See* A-9, ¶ 15

- "Ms. Thomas's claims are typical of the class of workers whom she seeks to represent." *See* A-6, ¶ 6.

These are the sole allegations in the entire charge relating to potential claims of Entertainers at the Clubs. Because she has not basis for these assertions, Ms. Flores-Thomas does not provide *any* details including, but not limited to, (1) the names of the other Entertainers who were allegedly sexually harassed, (2) any details about their alleged harassment – *i.e.* when they were harassed, at which Club this allegedly took place, (3) a sufficient basis for her belief that any other Entertainers, much less "all" of them, were sexually harassed (such as conversations with such Entertainers,

etc.) at both Clubs, or (4) the names of any individuals who allegedly witnessed other Entertainers being sexually harassed. Simply put, the Charge does not provide any basis for the EEOC to investigate via a burdensome and scattershot approach, the allegation that other Entertainers at the Clubs were sexually harassed. Ms. Flores-Thomas also fails to name a single manager or host at either of the Clubs that she alleges she, or anyone else, complained to about any harassment. Essentially, Ms. Flores-Thomas gives no reason that the EEOC should credit any of her claims, much less engage in a fishing expedition of the kind in which it now seeks to engage.

On January 27, 2023, the Clubs submitted their position statement, along with supporting evidence, refuting Ms. Flores-Thomas's baseless allegations. *See* A-13. None of this evidence has been refuted by Ms. Flores-Thomas. Months later, on May 31, 2023, the EEOC issued a Request for Information to Respondents making extraordinarily wide-ranging requests for information, including the information sought by the Subpoenas at issue here. *See* A-19. On August 7, 2023, Respondents responded to the Request for Information by producing certain responsive information and objecting to the requests that were overly broad, unduly burdensome, and irrelevant to the allegations in the Charge. *See* A-21. Critically, Respondents produced all responsive documents in their possession related to Ms. Flores-Thomas's individual allegations. The EEOC issued a deficiency letter on October 26, 2023 further demanding production of certain information, including

the information sought by the Subpoenas at issue here. *See* A-25. On November 15, 2023, Respondents responded to EEOC's deficiency letter by reiterating and expounding upon on its responses and objections to the production of the requested information. *See* A-27.

On November 21, 2023, the EEOC issued the Subpoenas demanding that Respondents produce the following information:

Provide the following compilation of information in an Excel Spreadsheet or Comma Separated Values (".CSV") file for all of the employees that worked for Respondent from January 2019 – Present:
  a) name;
  b) age;
  c) sex;
  d) race;
  e) position at Respondent;
  f) dates of employment; and
  g) address;
  h) phone number; and
  i) email address.

*See* A-31, 33. On November 29, 2023, Respondents timely exercised their right to petition the EEOC to revoke the Subpoenas. *See* A-37. The EEOC refused to revoke the clearly overbroad Subpoenas and issued a determination to that effect on January 10, 2024. *See* A-55. Instead, the EEOC sought enforcement of the Subpoenas and filed a petition with the District Court seeking the same. On June 6, 2024, the District Court granted the EEOC's petition to enforce the Subpoenas. *See* A-65. On June 20, 2024, Respondents timely filed a notice of appeal, seeking a reversal of the Court's Order in its entirety. Respondents also filed a motion to stay the District Court's

Order with the District Court. The District Court denied Respondents' motion for a stay on August 7, 2024. *See* A-73. Respondents filed their motion for a stay with this Court on September 10, 2024. This motion is currently pending.

On July 3, 2024, the EEOC issued Ms. Flores-Thomas, a right to sue letter. On September 25, 2024, Ms. Flores-Thomas filed a lawsuit in the United States District Court for the Southern District of New York, titled *Flores-Thomas v. AAM Holding Corp. et. al*., Case No. 24-cv- 7253, alleging the exact same claims as she did in the EEOC Charge.

## SUMMARY OF THE ARGUMENT

First, the District Court erred in finding that the EEOC's Subpoenas are not overly broad even though the Subpoenas seek entirely irrelevant information, including but not limited to age and race, concerning all employees of Respondents from January 2019 through November 21, 2023 (the date of the Subpoenas) regardless of the employee's gender, job title, whether they had any interaction with Ms. Flores-Thomas during their employment with the Clubs, or whether they had made similar complaints, and regardless of the fact that Ms. Flores-Thomas only worked at the clubs from October 2019 to August 2021.

Second, the District Court erred in finding that compliance with the Subpoenas would not be overly burdensome even though compiling the information sought by the Subpoenas will be an onerous manual task given that the Clubs are

8

small businesses, with limited personnel and do not have all of the requested information stored electronically in a database.

Third, the District Court erred in finding that the information requested by the EEOC would not invade the privacy of Respondents' employees most of whom are Entertainers who use "stage names" at the Clubs for anonymity. Requiring Respondents to produce Entertainers' contact information in furtherance of the Subpoenas could greatly harm these Entertainers in that by trying to contact these individuals, the EEOC may inadvertently alert individuals such as family members or significant others to the fact the Entertainers work at the Clubs.

Fourth, the EEOC no longer has the authority to investigate the Charge given that Ms. Flores-Thomas has now received a right to sue letter and has filed her claims in court. The EEOC's ability to resolve the dispute prior to litigation has been rendered moot and it is now up to the court to determine the merits of Ms. Flores-Thomas's claims.

## **ARGUMENT**

### I. **Standard of Law**

The EEOC does not have an unlimited right to subpoena employee records upon a charge being filed against an employer. The Supreme Court has made it clear that "unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled access only

to evidence "relevant to the charge under investigation."" *EEOC v. Shell Oil Co.*, 466 U.S. 54, 63 (1984) (quoting 42 U.S.C. §2000e-8(a)). This limitation on the EEOC's power gives effect to Congress" desire to prevent the Commission from "exercising unconstrained investigative authority." *Id.* at 65; *see also EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002); *EEOC v. Forge Indus. Staffing, Inc.*, No. 1:14-MC-00090-SEB, 2014 WL 6673574, at *2 (S.D. Ind. Nov. 24, 2014). This Congressional limitation on the EEOC's investigatory authority was "not accidental." *Id.* at 64-65 (quoting legislative history and noting that EEOC's "investigatory power is significantly narrower than that of other federal agencies").

Numerous courts have recognized that EEOC administrative subpoenas should not be enforced where the subpoenas amount to a "fishing expedition" or are overbroad or unduly duly burdensome in comparison to the relevance or necessity of the information requested. *See, e.g., United Air Lines, Inc.*, 287 F.3d at 654-55 (denying enforcement of EEOC subpoena to extent the voluminous demand was overbroad and unduly burdensome in relation to its relevance to underlying charge*); EEOC v. Burlington N. Santa Fe R.R.*, 669 F.3d 1154, 1157-59 (10th Cir. 2012) (same); *EEOC v. Loyola Univ. Med. Ctr.*, 823 F. Supp.2d 835, 839 (N.D. Ill. 2011) (same).

As discussed more fully below, the District Court's Subpoena Order should be reversed because the Subpoenas are vague and overly burdensome and constitute

a fishing expedition and are not limited to information relevant to the subject matter of the Charge. Additionally, the Subpoena Order should also be reversed because requiring Respondents to produce the requested information would invade the privacy of Respondents' employees. Further, the EEOC no longer has the authority to continue its investigation because Ms. Flores-Thomas has received her right to sue letter and initiated litigation in Court.

## II. The District Court Erred in Finding that the EEOC's Subpoenas Are Not Overly Broad

The District Court erred in failing to find that the information sought by the Subpoenas are not relevant to the underlying Charge. Indeed, the Subpoenas make a broad demand for sensitive, but irrelevant, information concerning all of Respondents' employees from January 2019 through November 21, 2023 (the date of the Subpoenas), irrespective of their sex, position, or whether they had any interaction with Ms. Flores-Thomas during their employment with the Clubs, or whether they are likely to have any information regarding Ms. Flores-Thomas's claims. *See* A-31. The extensive request for information made by the EEOC is not tailored in any way to uncover information that will shed light on the veracity of Ms. Flores-Thomas's baseless allegations. In other words, the Subpoenas are clearly a fishing expedition. The only claim asserted in the Charge with any degree of factual specificity is Ms. Flores-Thomas's allegation that she was subject to sexual harassment during the period of her employment as a Dancer with the Clubs. *See* A-

6, 7, and 9. Indeed, Ms. Flores-Thomas does not identify a single other employee who she thinks has been discriminated against on the basis of sex, or who would corroborate her claim that she was forced to spend time in rooms with patrons despite making a complaint that the patron was aggressive or made her uncomfortable. *See id*. Ms. Flores-Thomas does not even identify the date when such conduct allegedly occurred or who allegedly discriminated against these employees. *See id*. Other than rote, conclusory allegations, the Charge effectively raises only claims of individual discrimination. Moreover, the EEOC has not pointed to any investigation that it has done to date whereby it has uncovered any information that a multitude of other employees claim discrimination or harassment similar to that claimed by Ms. Flores-Thomas.

The EEOC's broad, generalized request for information regarding other employees bears no relevance to Ms. Flores-Thomas's Charge. *See Equal Empl. Opportunity Commn. v TriCore Reference Labs*., 849 F3d 929, 939 (10th Cir 2017) ("a single discriminatory act does not, by itself, warrant a broader pattern-or-practice investigation."); *E.E.O.C. v. Nestle Prepared Foods*, 2012 WL 1888130, at *3 (E.D.Ky.,2012) ("[t]he Court is aware of no other charges against Nestle alleging GINA violations, and the EEOC points to no other information it has acquired in the course of its investigation of Peel's charge that would suggest that any other violations have occurred. Accordingly, the Court finds that the information sought

under [the subpoena] irrelevant to the charge being investigated"); *Equal Emp. Opportunity Comm'n v. Eberspaecher N. Am. Inc.*, 67 F.4th 1124, 1136 (11th Cir. 2023) (denying the EEOC's request for "information from every ENA facility in the country on all attendance-related terminations regardless of the terminated-employees" disability-status or entitlement to FMLA leave" where "the EEOC issued a charge against a single facility, based on the complaint of a single employee, about a specific kind of attendance-related discrimination: penalizing employees for taking FMLA-protected absences.").

Case law strongly supports Respondents' position. For instance, in *E.E.O.C. v. Royal Caribbean Cruises*, an employee filed a charge with the EEOC against Royal Caribbean, alleging ADA discrimination when it refused to renew his contract after a medical diagnosis. 771 F.3d 757, 759 (11th Cir 2014). The EEOC ultimately issued an administrative subpoena requesting a "[l]ist [of] all employees who were discharged or whose contracts were not renewed [from August 25, 2009, through present] due to a medical reason." *Id.* (third alteration in original). The court explained that the subpoena was improperly "aimed at discovering members of a potential class of employees or applicants who suffered from a pattern or practice of discrimination, rather than fleshing out [the complaining employee's] charge." *Id.* at 760–61. Like the requests in *Royal Caribbean*, the Subpoenas are improperly aimed at discovering potential allegations made by other employees, not at fleshing out Ms.

Flores-Thomas's unfounded claim of sexual harassment. Moreover, like the charge in *Royal Caribbean*, the Charge does not allege a specific pattern or practice of discrimination, other than two entirely conclusory allegations.

More specifically, the Subpoenas are overly broad and irrelevant because:

- They request the ages of all employees even though no age discrimination is claimed.
- They request the races of all employees even though no race discrimination is claimed.
- They request the names of all employees regardless of gender even though the Charge only alleges sex discrimination against a woman.
- They request information from January 2019 through November 21, 2023 even though Ms. Flores-Thomas only worked at the Clubs from October 2019 until August 2021.

The Subpoenas are clearly *pro forma* requests generated by the EEOC and overbroad and not reasonably tailored towards discovering information relevant to the Charge in this case. Not only does the Charge not make any specific claims about others being subject to the type of harassment that Ms. Flores-Thomas complains about, but the Charge does not allege that any male employees were subject to harassment. Nor does the Charge make claims of age or race discrimination. The EEOC is essentially seeking to bootstrap the claims of one individual who makes a discrete claim of harassment to seek information about employees who have nothing to do with that individual's claims in order to engage in a fishing expedition.

In the Subpoena Order, the District Court reasoned that the EEOC's Subpoenas were not overbroad because the evidence requested would provide

context on whether discrimination had taken place. *See* A-68. But this is not the type of case in which evidence that an employer discriminated in one situation or employment position is relevant to a determination of whether the employer discriminated in other circumstances. *See Equal Emp. Opportunity Comm'n v. Se. Food Servs. Co., LLC*, No. 3:16-MC-46-TAV-HBG, 2017 WL 1155040 (E.D. Tenn. Mar. 27, 2017), *report and recommendation adopted*, No. 3:16-MC-46-TAV-HBG, 2017 WL 2728422 (E.D. Tenn. June 23, 2017) (denying the EEOC's request for subpoenaed information where the requested pattern or practice evidence was not relevant to complainant's individual charge of discrimination). Rather, the Charge does not focus on an actual formal policy or any evidence of a pattern and practice, but essentially focuses on Ms. Flores-Thomas's unique alleged experiences.

In sum, the District Court erred in finding that the extensive information requested by the Subpoenas is adequately tailored, relevant or necessary to resolve Ms. Flores-Thomas's Charge. Simply put, the Subpoenas are nothing more than a "fishing expedition" based on an "idle hope that something may be discovered." *Forge Indus. Staffing, Inc*., 2014 WL at 3 (quoting *United Air Lines, Inc*., 287 F.3d at 653). The EEOC's request that the District Court enforce the Subpoenas should, therefore, have been denied.

**III.    The District Court Erred in Not Finding that the Subpoenas Are Overly Burdensome**

The District Court erred in finding that compliance with the Subpoenas would not be overly burdensome. The burden of compliance of a request for information must be weighed against the relevance of the requested information. *See United Air Lines, Inc*., 287 F.3d at 654 ("Essentially, it is the court's task . . . to weigh the likely relevance of the requested material to the investigation against the burden to the respondent of producing the material.") (internal brackets omitted); *EEOC v. Ford Motor Credit Co*., 26 F.3d 44, 47 (6th Cir. 1994) ("Essentially, this court's task is to weigh the likely relevance of the requested material to the investigation against the burden to Ford of producing the material."); *EEOC v. ABM Janitorial-Midwest, Inc*., 671 F. Supp. 2d 999, 1006 (N.D. Ill. 2009) ("[I]n balancing the EEOC's legitimate interest in obtaining what is, at best, marginally relevant information against the substantial challenges of compliance…I conclude that the EEOC's voluminous request is overly burdensome.").

Here, evidence submitted to the District Court shows that compiling the voluminous information sought by these overbroad Subpoenas will be an onerous task given that the Clubs are small businesses, with limited personnel and do not have all of the requested information stored electronically in a database.  Rather, the Clubs' two administrative employees would instead have to sift through thousands of documents related to hundreds of former and current employees, and then enter

information into a single database for the sole purpose of complying with these overbroad Subpoenas. *See* A-63, ¶¶ 4-5. Respondents estimate that reviewing the files would require at least three hundred (300) hours of staff time and would be very expensive, gravely disrupting the normal operations of Respondents. *See* A-64, 65, ¶¶ 6-8.

Respondents do not have a dedicated human resources department that can expend the hours working to comply with the overbroad Subpoenas or the ability to pay an outside vendor to expend those same hours sifting through documents. *See id*. ¶¶ 3-7; *see also E.E.O.C. v. McCormick & Schmick's*, No. C07-80065 WHA, 2007 WL 1430004, at *7 (N.D. Cal. May 15, 2007) ("Compliance with the subpoena in its original form would be a considerable burden on respondents. As with many restaurants, management positions are staffed leanly. Taking large amounts of managers" time away from normal duties would be a significant hardship to its operations"). Thus, the Subpoenas are unnecessarily burdensome and therefore unenforceable. *See NLRB v. Am. Med. Response, Inc*., 438 F.3d 188, 193 n.4 (2d Cir. 2006) (explaining that administrative subpoena is unnecessarily burdensome and unenforceable when "compliance threatens to unduly disrupt or seriously hinder normal operations of a business"); *EEOC v. McLane Company, Inc*., No. CV-12-615-PHX-GMS, 2012 WL 1132758, at *6 (D.Ariz. April 4, 2012) (requiring party

to provide information that could only be found through a manual search was unduly burdensome).

Indeed, the Subpoena Order fails to take into account the burden and costs of complying with the Subpoenas as testified to by Respondents' Office Manager. For instance, in the Subpoena Order the District Court asserts that "Respondents' assertions… fail to meet their burden of showing that compliance would be excessively burdensome" A-71. To the contrary, Respondents' Office Manager testified that compiling the information requested by the Subpoenas would divert her from working on other necessary tasks such as billing, ordering supplies, and other miscellaneous time-consuming tasks. *See* A-64, 65, ¶¶ 3-6.  The Office Manager also makes it clear that the Clubs have minimal administrative staff of two employees, to carry out all of the duties that are necessary to keep the Clubs in business. *See* A-64, ¶ 3. In the Subpoena Order, the District Court mistakenly asserts that Respondents' Office Manager fails explain why it would take a significant amount of time to compile the information requested by the EEOC. *See* A-70, 71. However, the Office Manager's declaration describes in detail why it would be a lengthy process stating that "I would have to manually review each of [the employees"] daily log-in/log-out sheets and then enter the dates of their employment in an electronic database. I would have to similarly review other personnel

documents of employees and enter that information in an electronic databased to compile the other information requested by the EEOC." *See* A-65, ¶ 5.

Unfortunately, the Subpoena Order also erroneously minimizes the burden Respondents will bear in producing the subpoenaed information by pointing to the IRS and EEOC's requirements for certain employers to maintain certain payroll information. However, neither the IRS or EEOC, require employers to compile all the data sought by the EEOC here, namely the names, ages, sex, races, positions, dates of employment, addresses, phone numbers, and email addresses of all employees going back five years, in an excel spreadsheet.

The EEOC, as part of its general data collection efforts, requires certain employers to report "workforce demographic data, including data by job category and sex and race or ethnicity." EEO Data Collections, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/data/eeo-data-collections [https://perma.cc/2Q8U-WZGU]. As an initial matter, this requirement only applies to employers with more than one hundred (100) employees during a snapshot of time spanning an employer-selected pay period in the fourth quarter of a given year. *See* EEOC Fact Sheet: Who Must File, U.S. Equal Employment Opportunity Commission, https://www.eeocdata.org/pdfs/WHO_MUST_FILE.pdf. There is no evidence that Respondents fall under this requirement. The EEOC and the District Court both just assumed that this was the case based on no actual facts. Further,

unlike the Subpoenas, the EEOC does not require employers to tie this data to the names or sensitive other identifying information of employees. Nor does the EEOC require employers to maintain the contact information or ages of employees. The only data required to be reported is gender and race/ethnicity data grouped by job category, not name. *See id*.

The IRS, only requires employees to keep the "[n]ames, addresses, social security numbers, and occupations of employees" and "[d]ates of employment for each employee." *See* A-70. The IRS does not require employers to keep the ages, sex, races, phone numbers, or email addresses of employees. Nor are employers required to maintain this information in electronic form.

Accordingly, the District Court erroneously found that the Subpoenas were not unduly burdensome.

## IV. The District Court Erred in Finding that Producing the Information Requested by the Subpoenas Would Not Invade the Privacy of Respondents' Employees

The District Court also erred in finding that the producing the information requested by the Subpoenas would not invade the privacy of Respondents' employees. Indeed, producing the requested information would invade the privacy of Respondents' employees, most of whom are Entertainers who use "stage names" at the Clubs for anonymity. *See* A-64, ¶ 9. Crucially, some of the Entertainers' family members—their parents, partners, children—may not even know they work as

Entertainers. Requiring Respondents to produce Entertainers' contact information in furtherance of this fishing expedition could greatly harm these Entertainers.

The District Court reasoned that Respondents cannot rely on privacy concerns for its employees to withhold information because the agency is prohibited by statute to disclose information obtained during an investigation. *See* A-72. This misses the point. The concern is that in trying to contact Entertainers for the purposes of their fishing expedition, the EEOC will inadvertently alert individuals who are not Entertainers to the fact that the Entertainers work at the Clubs, a fact that the Entertainers have assiduously tried to keep private. A promise to not publicly disclose the Entertainers' contact information does not alleviate this concern. Disclosing this sensitive information would also harm Respondents as Entertainers would be less likely to work for an employer that shares their confidential information.[3]

Accordingly, the District Court erred in failing to find that the Subpoenas violate the privacy of Respondents' employees.

## V. The EEOC Does Not Have the Authority to Continue Its Investigation After Ms. Flores-Thomas Filed Her Lawsuit

A stay should also be granted because Ms. Flores-Thomas filed her own lawsuit, leaving the EEOC with no authority to continue its investigation. Indeed, on

---

[3] On August 14, 2024, counsel for Respondents had a call with counsel for the EEOC where Respondents inquired about how the Subpoenaed information would used, but the EEOC refused to specify on how it was going to use the information in its investigation or agree to any limits on its use.

September 25, 2024, after receiving a right to sue letter from the EEOC, Ms. Flores-Thomas filed a lawsuit in the United States District Court for the Southern District of New York, titled *Flores-Thomas v. AAM Holding Corp. et. al*., Case No. 24-cv-7253, alleging the same claims, including the conclusory class claims, as she did in the EEOC Charge.[4]

In *E.E.O.C. v. Hearst Corp*., 103 F.3d 462, 469 (5th Cir. 1997), the Fifth Circuit ruled that the "EEOC may not continue to investigate a charge once formal litigation by the charging parties has commenced" because the Congress granted the EEOC investigative authority to determine whether Title VII had been violated and to assist the agency in its efforts to resolve disputes without formal litigation. The Fifth Circuit found that these purposes are no longer served once formal litigation is commenced, and thus the EEOC was without authority to continue its investigation. The Court in *E.E.O.C. v. Fed. Home Loan Mortg. Corp*., 37 F. Supp. 2d 769, 774 (E.D. Va. 1999) similarly found that the EEOC's authority to issue and enforce the subpoena expired upon issuance of the right to sue letter and the charging party's initiation of litigation.

Similarly, here, the EEOC's investigation serves no purpose, and certainly does nothing to prevent formal litigation, given that Ms. Flores-Thomas has filed her

---

[4] This argument was not raised before the District Court because Ms. Flores-Thomas had not filed her complaint when this case was before the District Court. Nevertheless, this Court has the discretion to consider this argument. *See United States v. Stillwell*, 986 F.3d 196, 200 (2d Cir. 2021) ("[e]ntertaining issues raised for the first time on appeal is discretionary with the panel hearing the appeal.") (internal quotations omitted)

claims in court after receiving a right to sue letter. The EEOC's ability to resolve the dispute prior to litigation has been rendered moot and it is now up to the court to determine the merits of Ms. Flores-Thomas's claims. Accordingly, the EEOC has no authority to continue its investigation and Respondents' request for a stay should be granted.

## CONCLUSION

For the reasons above, Respondents respectfully request that this Court reverse the District Court's Subpoena Order, together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
            October 2, 2024
                              **AKERMAN LLP**

                              By:  */s/   Jeffrey A. Kimmel*
                                 Jeffrey A. Kimmel Esq.
                                 1251 Avenue of the Americas, 37th Floor
                                 New York, New York 10020
                                 jeffrey.kimmel@akerman.com
                                 Attorney for Respondents

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i), and the word limit of Fed. R. App. P. 32(a)(7)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,145 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch and Times New Roman.

**AKERMAN LLP**

By: */s/  Jeffrey A. Kimmel*
Jeffrey A. Kimmel Esq.
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
jeffrey.kimmel@akerman.com
Attorney for Respondents